## Commonwealth v. Schaffer

*W. H. Schneller*, for Commonwealth.

*A. K. Hettinger*, for defendants.

HENNINGER, J., March 11, 1940.—This case presents the interesting problem whether a son, resident in Massachusetts, may be prosecuted in Pennsylvania upon information of his sister for the support of his mother, domiciled in New Jersey, the warrant having been issued and served in this county.

It is to be noted that, in spite of the diversity of citizenship, there is good reason for the choice of this county as a forum. Until two years ago the mother was a resident of Lehigh County. All of her eight children, excepting only the prosecutor, with whom she lives, and defendant, Albert F. Schaffer, reside in Allentown, Pa. A prosecution is pending before our court to no. 49-A June sessions, 1939, against the other five children, which case has been continued because none of them was then financially able to lend support. Defendant, Albert F. Schaffer, is employed by a concern whose headquarters are in Allentown, Pa.

Granting then that the prosecution is brought in good faith and that the choice of this forum is not capricious nor for the purpose of prejudicing or harassing defendant, do we have jurisdiction over the subject matter and the parties? We certainly have jurisdiction over the parties, for prosecutor has chosen this forum and defendant

was here voluntarily at the time of his arrest in Lehigh County.

Prosecutor cites the Act of June 25, 1895, P. L. 269, 62 PS §1955, as authority for bringing the prosecution in Lehigh County. The first section of that act reads as follows:

"That in addition to the remedies now provided by law, if any child of full age, being within the limits of this Commonwealth, has neglected or hereafter without reasonable cause shall neglect to maintain his or her parents not able to work or of sufficient ability to maintain themselves, it shall be lawful for any alderman, justice of the peace or magistrate of this Commonwealth, upon information made before him, under oath or affirmation by said parent or parents or by any other person or persons, to issue his warrant to any police officer or constable for the arrest of the person against whom the information shall be made as aforesaid, and bind him or her over, with sufficient surety, to appear at the next court of quarter sessions, there to answer the charge of not supporting his or her parent or parents."

The language of that act is very significant. In the first place the words "in addition to the remedies now provided by law" indicate that it is an enabling act and not a restrictive one. The words "being within the limits of this Commonwealth" are also exceedingly broad. Clearly mere physical presence of defendant is all that is required, since there is no mention of either residence or domicile. It would seem, therefore, that jurisdiction is conferred upon this court "if any child of full age, *being within the limits of this Commonwealth* . . . shall neglect to maintain his or her parents . . ." (italics supplied).

Furthermore, the words after "parents", "not able to work or of sufficient ability to maintain themselves" and the penalty in section 2 of said act, 62 PS §1956, of "fifty dollars per month," indicate that the act was intended for the comfortable maintenance of parents and not merely in relief of the poor district. This view is borne out by

Commonwealth v. Hecker, 82 Pa. Superior Ct. 123, in which a mother, although she had a contract with a daughter for her support, was granted a support order from her other children, when it appeared that enforcement of the maintenance covenant would be inequitable.

This case is ruled in almost all of its phases by Commonwealth ex rel. v. Sanders, 111 Pa. Superior Ct. 202, in which a wife residing on Long Island obtained an order of support in Philadelphia against her husband residing there, the Superior Court holding (p. 206) that under the terms of the Act of April 13, 1867, P. L. 78, 18 PS §1251, the sole jurisdictional requirement is that defendant be " 'within the limits of this Commonwealth' ". This case cites as authority Commonwealth v. Hopkins, 53 Pa. Superior Ct. 16, affirmed by the Supreme Court in 241 Pa. 213, in which a wife residing in Ohio secured a support order in Allegheny County. It is clear, therefore, that jurisdiction does not depend upon any expenditures made by a poor district for the support of dependents nor upon any liability of a poor district therefor.

The converse of the Sanders and Hopkins cases is Demott v. The Commonwealth, 64 Pa. 302, and Commonwealth ex rel. v. Shetzline, 84 Pa. Superior Ct. 100. The former holds that an action for support can be maintained in any county in the State and need not be in the county of defendant's residence. In the Shetzline case, defendant was a resident of New Jersey, but was served with a warrant in Philadelphia and the court order was sustained on the theory that mere physical presence of defendant in the State conferred jurisdiction.

In Commonwealth v. Hawkins, 80 Pa. Superior Ct. 520, it was held that an order, once made, continued enforceable although both relator and defendant had removed from the State. All these cases have stressed the fact that the Support Act of 1867, supra, was not in relief of the poor district and, therefore, cases decided under the Act of June 13, 1836, P. L. 539, or similar acts, are not applicable to the present situation. The Support Law of

June 24, 1937, P. L. 2045, 62 PS §1971, conferring jurisdiction on the court of the county where an indigent person resides, clearly is an act in relief of a public agency, for its title states in part:

"Relating to the support of indigent persons publicly cared for or assisted". It does not, therefore, supersede existing laws providing for comfortable maintenance of wife, children, or parents.

The language of the Act of 1867, supra, is almost identical with that of the Act of 1895, supra, and, therefore, any decision based on the one will rule the other. It is true that in all the cases cited either the relator, the defendant, or the person seeking support, resided in the jurisdiction of the court making the order, but the reasoning of the cases would sustain an order under the circumstances in our case.

Courts very properly look with suspicion upon persons choosing their forum for no apparently good reason and we are accepting it only because of the valid reason given earlier in this opinion and because of the almost insuperable difficulty the prosecutor would otherwise have. Nonsupport of a parent is not the subject of extradition and if relator would have to follow defendant to his home State, several courts would be exercising jurisdiction over the matter. While defendant and prosecutor are presently the only prosperous children, surely the time will come when others will be able to help and all of them reside within the jurisdiction of the court and are already in court upon a continued case.

No objection has been made to the reasonableness of the order. The mother is bedfast and prosecutor testified that a nurse is necessary at $10 per week. Defendant is earning at least $275 per month. The order against him was $20 per month.

Defendant objects to the fact that of seven children only two were arrested in this prosecution. Here again there was a valid reason, for at the time of the action against the other five, both of these defendants were be-

yond the jurisdiction of the court and now the action against the other five is still open. That less than all the children of a parent may be proceeded against is shown in the case of Commonwealth ex rel. v. Riser, 95 Pa. Superior Ct. 581. In that case an order was sustained although only one of four children was proceeded against, it appearing that the others were not within reach of process.

And now, March 11, 1940, defendant's motion in arrest of judgment is denied and defendant is ordered to comply forthwith with the terms of the sentence of the court made January 6, 1940, to wit, to pay to the probation officer the sum of $20 per month for the support of his mother, Mary A. Schaffer, said order to date from December 12, 1939, as per stipulation of counsel. Costs to be paid at $10 per month.