Fedorko, Appellant, *v.* Pennsylvania Electric
Company.

Argued April 22, 1947. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Llewellyn E. Lloyd,* with him *George Jerko,* for appellant.

*Francis A. Dunn,* with him *George S. Dulansey,* for appellee.

OPINION BY ROSS, J., July 17, 1947:

In this workmen's compensation case, the board affirmed the referee's order of disallowance of compensation, the lower court dismissed claimant's appeal, and the claimant has appealed to this court.

The facts in the case are not in dispute. The defendant owns and operates a power plant and a coal mine incident thereto on the westerly bank of the Conemaugh River across the river from the borough of Seward, Westmoreland County. The claimant, Frank Fedorko, who resides in Seward, is employed in defendant's mine. On the morning of March 22, 1944, while on his way to work, the claimant suffered injuries when he fell on an icy pathway leading from a public street in Seward to a 640-foot swinging foot bridge over the Conemaugh River. The pathway was on the property of the defendant and the foot bridge to which it led was erected and maintained by the defendant for the convenience of its employes and the public. It was used as a foot bridge and was neither constructed nor used for vehicular traffic. Defendant's power plant, the entrance to its mine and clerical offices are located between the west bank of the river and a public highway. They are entirely surrounded by a wire fence through which there are two entrances, known as Gates No. 1 and 2. At each gate a guard is stationed and it is necessary for anyone entering to show his badge or identification

card in order to gain admission. Both gate offices had time clocks to be punched by in-going and out-going employes. Although it was much shorter for people living in Seward to use the pathway and foot bridge, they could also use a public highway to reach defendant's plant and mine.

The claimant appellant contends ". . . that the foot bridge and the approaches thereto, including the place of the accident, are an essential part of the defendant's operations for the reason that if it were not for this bridge the defendant's employees residing in Seward and New Florence and vicinity would have no other practical means of access to the defendant's plant. They would have to walk a longer distance along the state highway and would be subject to the hazards of vehicular traffic."

The question before us, a legal one (*Wolsko v. American Bridge Co. et al.,* 158 Pa. Superior Ct. 339, 44 A. 2d 873), is whether at the time of his injury, the claimant was on the "premises" of his employer within the meaning of the term as used in Section 301 of the Workmen's Compensation Act of 1915 as re-enacted and amended by the Act of June 21, 1939, P. L. 520, section 1, 77 PS §411.

The word "premises" in the Act is limited to the property of the employer used in connection with the actual place of work where the employer carries on the business in which the employe is engaged. *Meucci v. Gallatin Coal Co. et al.,* 279 Pa. 184, 123 A. 766; *Hopwood v. Pittsburgh,* 152 Pa. Superior Ct. 398, 33 A. 2d 658. It is well settled that to be considered as happening on the "premises" of the employer the accident must have occurred on property owned, leased or controlled by the employer and so connected with the business in which the employe is engaged, as to form a component or integral part of it. *Feeney v. N. Snellenburg & Co. et al.,* 103 Pa. Superior Ct. 284, 157 A. 379; *Wolsko v. Ameri-*

*can Bridge Co. et al.,* supra, 158 Pa. Superior Ct. 339, 44 A. 2d 873; *Young v. Hamilton Watch Co.,* 158 Pa. Superior Ct. 448, 45 A. 2d 261.

Claimant relies upon *Barton v. Federal Enameling & Stamping Co. et al.,* 122 Pa. Superior Ct. 587, 186 A. 316, and *Molek v. W. J. Rainey, Inc.,* 120 Pa. Superior Ct. 95, 181 A. 841, to sustain his contention that the place of his injury was a part of the "premises" of his employer. However, these cases are clearly distinguishable from the instant case. In the *Barton* case the employe was killed while driving his automobile on a private driveway constructed by the employer primarily for the use of its own and other trucks in delivering and removing materials, merchandise, etc. The driveway was the only entrance to the rear of the plant and the only automobile or truck entrance to any part thereof; employes were tacitly permitted to use it and to park their cars in the rear of the plant. We held that at the time of the accident the employe had not left the premises where the business in which he was engaged was carried on.

In the *Molek* case the referee found that the place where the claimant was injured was included within the *operating premises* of the employer and this court held that the referee's finding was "amply supported by the evidence". Speaking through Judge CUNNINGHAM, we stated, at page 98: "It is of course true that the word 'premises' must receive a more narrow definition than that of 'property'. At the same time, we must give a common-sense meaning to the term. The line between what is to be considered premises and what is not must necessarily be drawn in a somewhat arbitrary manner when considering a large mine property. The referee has drawn this line at the state highway. We believe this to be a finding in accord with established facts. Obviously, the premises did not terminate at the actual mouth of the mine. The company office is located on one side of the triangle. The second side is bounded by

the private road leading up to the mine entrance, immediately behind the office building. Along this private road are located the check house and oil house. The actual operations of the mine were therefore carried on immediately adjacent to the triangular strip. Exactly across the state highway from this strip the employer maintained a parking lot where its employees, including the claimant, left their automobiles while at work. It is therefore logical to make the highway the line of demarcation, rather than narrowly to exclude from the premises the small triangular embankment."

In the present case, the pathway where the claimant was injured is distinct from the operating business of the defendant. The line of demarcation between the place of injury and the defendant's operating premises is clear, distinct and "logical"—the Conemaugh River. The case is on all fours in its material aspects with *Young v. Hamilton Watch Co.*, supra. In that case the claimant on his way to work was injured while walking on a parking lot owned by the employer and maintained by it for the convenience of its employes. The parking lot was separated from defendant's plant, which—as in the present case—was surrounded by a fence and policed by guards, by a public highway. In denying compensation this court, speaking through Judge (now President Judge) RHODES, stated: "Neither physically nor constructively was the parking lot part of the premises upon which the employer's business was conducted, and in which claimant was engaged. . . . The use of the parking lot by claimant was optional. It was voluntarily provided for his convenience or accommodation, but was not essential to defendant's plant or an integral part of its business."

It is our opinion that the legal principles set forth in the opinion in the *Young* case are applicable to the facts in this case and the decision in it controls the present appeal.

Order affirmed.